IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RONALD M.J. LEE | § | |
| | § | |
| VS. | § | NO. A-07-CA-395-AWA |
| | § | |
| U.S. SECURITY ASSOCIATES, INC. | § | |

## ORDER

Before the Court in the above entitled and styled cause of action are Defendant's Motion for Partial Summary Judgment, filed February 29, 2008 (Clerk's Doc. No. 75); Plaintiff's Response to Defendant's Motion for Summary Judgment, filed March 25, 2008 (Clerk's Doc. No. 87); and Defendant's Reply (Clerk's Doc. No. 94), filed April 7, 2008.  Plaintiff, Ronald M.J. Lee (" Mr. Lee"), has brought claims under the Fair Labor Standards Act ("FLSA") for unpaid overtime pay, improperly paid overtime pay, and retaliation based on his complaints regarding overtime pay.  It is uncontested that Plaintiff is a non-exempt employee for purposes of the Act.  Defendant, U.S. Security Associates, Inc. ("USSA") now seeks summary judgment on all but a limited number of Plaintiff's claims.  Specifically, Defendant seeks summary judgment on Plaintiff's claims of: (1) "off the clock" unpaid overtime; (2) retaliation against Plaintiff for his complaints about unpaid overtime; (3) "on call" or "holding the supervisor's phone" unpaid overtime; and (4) the availability of compensatory and punitive damages under the FLSA.

### I. STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of

summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## II. BACKGROUND

In light of the summary judgment standard of review, the following facts are viewed in the light most favorable to the non-movant. *Ragas*, 136 F.3d at 458.

Mr. Lee joined USSA in 2002 and began working as a supervisor in 2004. PLAINTIFF'S EXHIBIT 1: AFFIDAVIT OF RONALD M.J. LEE. USSA provides security services to third-party companies throughout the Austin area. *Id.* While working as a supervisor, Mr. Lee primarily reported to Andy Erbaugh and Jerry McFarland. Mr. Erbaugh and Mr. McFarland reported to Marty Passmore, who oversees the Austin office of USSA. *Id.* Mr. Lee was typically scheduled to work 40 hours a week. *Id.* However, in addition to the 40 hours, he also worked substantial non-shift and "off the clock" hours. *Id.* Mr. Lee was instructed by his supervisor, Mr. McFarland, not to record these hours. Under the instruction of Mr. McFarland, Mr. Lee did not record, and was not paid, for a number of activities, including picking up Mr. Passmore at the airport, transporting security guards from their homes to worksites, working past his shift to create a weekly schedule, gassing up vehicles at worksites, taking work calls from his personal cell phone and responding to such calls,

holding the supervisor's phone once his shift had finished, and performing chores requested by his supervisors.[1]

Mr. Lee was written up, disciplined, and demoted from supervisor to security guard in February of 2007.  He was then re-promoted to supervisor in April of 2007. After his demotion in February of 2007, Mr. Lee contacted the U.S. Department of Labor ("DOL") to inquire about his legal rights regarding overtime pay.  An unnamed individual at the DOL apprised Mr. Lee that he had a valid claim for unpaid overtime, but suggested that he try to work things out with USSA before utilizing the formal mechanisms of the DOL.

Upon returning to work as a supervisor, Mr. Lee sent a letter to Mr. Passmore complaining of unpaid overtime and discussing his contact with the DOL and his demand for back wages. PLAINTIFF'S EXHIBIT 3: APRIL 9, 2007 LETTER FROM MR. LEE TO MR. PASSMORE.  On April 16, 2007, another security guard called Mr. Lee and told him that he had overheard Mr. Erbaugh stating that he was looking for a reason to terminate Mr. Lee.  Later that day, Mr. Lee received a reprimand for "falsifying records." PLAINTIFF'S EXHIBIT 4: APRIL 16, 2007 DISCIPLINARY ACTION REPORT.  The report claims that Mr. Lee "falsified records" when he wrote that Officer Henry Lewis had a correct uniform, when in fact, Officer Lewis was missing his name tag.  Mr. Lee disputed the reprimand, claiming that he had reported Officer Lewis' lack of a name tag to management a number of times, but that management had yet to procure a name tag for Officer Lewis. PLAINTIFF'S EXHIBIT 5: MR. LEE'S RESPONSE TO DISCIPLINARY ACTION REPORT.  Furthermore, on April 25, 2007, USSA

---

[1] Mr. Lee also seeks compensation as he was required to show up to work 15-20 minutes early for "pass downs."  Notwithstanding USSA's collateral attack on this claim in a footnote of it's reply brief, USSA does not seek summary judgment on this claim in it's original motion for summary judgment so it will not be addressed.

unilaterally changed Mr. Lee's work schedule when no other supervisor's schedule was changed. On April 26, 2007, Mr. Lee sent a letter to the USSA Human Resources department. PLAINTIFF'S EXHIBIT 6: APRIL 26, 2007 LETTER FROM LEE TO HR DEPT. In this letter, Mr. Lee once again complained about unpaid overtime and USSA's retaliation against him in response to his complaints. While Mr. Lee received no response to this letter, he was once again demoted to security guard on May 5, 2007 for allegedly "gossiping" and "congregating." PLAINTIFF'S EXHIBIT 7: MAY 5, 2007 DISCIPLINARY ACTION REPORT. Following his demotion, USSA did not readily provide Mr. Lee with work and he was forced to resign on May 22, 2007.

## III.  ANALYSIS

**A.      "Off the Clock Work"**

Under the FLSA, no employer shall employ any of it's employees for a work week that is longer than 40 hours unless the employee receives as compensation for his employment at least one and one-half times the regular rate for all overtime hours. 29 U.S.C. § 207(a). *Harvill v. Westward Comm., LLC.*, 311 F.Supp2d 573, 583 (E. D. Tex. 2004). If an employer knows or should know that an employee is working overtime, it must comply with Section 207(a). *Id.* However, if an employer has no knowledge, or reason to know, that an employee is engaging in overtime, the employer's failure to pay overtime is not a violation of Section 207(a). *Newton v. Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Uhler v. Galesi Mgmnt Corp.*, 199 U.S. Dist. LEXIS 210 *18 (N.D. 1999).

In the present case, USSA claims that there is no evidence that it had actual or constructive knowledge that Mr. Lee was working in excess of the hours he reported. USSA policy requires employees to certify that hours worked on a daily time card are true and correct and Mr. Lee followed this procedure. DEFENDANT'S EXHIBIT B: DEPOSITION OF RONALD M.J. LEE, DEFENDANT'S

EXHIBIT C: DECLARATION OF MARTY PASSMORE.  USSA also contends that Mr. Lee did not complain about unpaid overtime until he had been employed by USSA for five years and that Mr. Lee had reported, and been paid for, 805.75 hours of overtime during his employment with USSA.  DEFENDANT'S EXHIBIT C: DECLARATION OF MARTY PASSMORE, DEFENDANT'S EXHIBIT E: DECLARATION OF DEBRA J. GIVENS.  Such evidence, standing alone, would suggest that USSA did not know Mr. Lee was not being paid for overtime.

However, Mr. Lee submits evidence to the contrary, suggesting that USSA knew he was working overtime, and in fact instructed him not to record it.  This evidence clearly creates a fact issue preventing summary judgment. For instance, Mr. Lee claims that Mr. McFarland instructed him not to record his time and that it would benefit him later if he did not record his overtime.  PLAINTIFF'S EXHIBIT 8: DEPOSITION OF RONALD M.J. LEE.  Furthermore, another supervisor, Ron Phillips, testified that he heard Mr. McFarland instruct Mr. Lee not to record all of his time.  PLAINTIFF'S EXHIBIT 9: DEPOSITION OF RON PHILLIPS.  Another supervisor, Jim Arnold, testified that he too was told not to record all of his overtime. PLAINTIFF'S EXHIBIT 10: DEPOSITION OF JIM ARNOLD Finally, management appears to acknowledge it's awareness of the unpaid overtime in and e-mail from J. Shelton to Mr. Lee stating that supervisors "put in the long hours, sacrifice family time, and sometime [sic] not fully paid for it.  PLAINTIFF'S EXHIBIT 11: EMAIL FROM J. SHELTON.

USSA points to *Uhler* for the proposition that an employer is not liable when it does not have knowledge of the unpaid overtime hours because the employee did not report such hours. 199 U.S. Dist. LEXIS 210 *18 (N.D. 1999).  In that case the Court granted summary judgment in favor of the employer when the employee never complained while working for the employer and only vaguely referenced an unidentified supervisor who told him not to report such hours. The present case is

6

inapposite from *Uhler*. In the present case, Mr. Lee complained about the lack of pay while still employed for USSA, has testified as to the exact manager who told him not to record his time, has shown that other supervisors were told not to report their time, and has written evidence acceding that management knew supervisors were sometimes not paid for all their time.

Accordingly, with respect to Mr. Lee's "off the clock" time he has shown a genuine issue of fact. Viewing the evidence in the light most favorable to the non-movant, summary judgment must be denied on this claim.[2]

**B.      Retaliation**

Mr. Lee claims that he was discriminated against and demoted by USSA in violation of Section 215(a)(3) of the FLSA. Section 215(a)(3) provides in part:

> [I]t shall be unlawful for any person to . . . discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under this chapter.

Defendant seeks summary judgment on Mr. Lee's retaliation claim, arguing that: (1) Mr. Lee's complaint regarding overtime pay was not protected activity under the FLSA; (2) Mr. Lee has not

---

[2]In it's Reply Brief, USSA introduces another argument with respect to "off the clock" time. It argues for the first time that Mr. Lee is equitably estopped from claiming violations of the FLSA because he waited five years to bring such claims. The court declines to consider this argument, as it was not raised until the reply. It is error to grant summary judgment on a ground not raised in the motion. *John Deere Co. v. Am. Nat'l Bank, Stafford,* 809 F.2d 1190, 1192 (5th Cir.1987). Further, the court will not consider an argument raised for the first time in a reply brief. *See Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sep. 25, 2006); *Wesley v. Yellow Transp., Inc.*, 2008 WL 294526. At * 18 (N.D. Tex. Feb. 4, 2008). Further, one of the elements of estoppel is that USSA "did not have knowledge of the facts." *Mangaroo v. Nelson*, 864 F.2d 1202 (5th Cir. 1989). As already discussed in the text, there is plainly a fact question regarding the state of USSA's knowledge of Lee's off the clock work.

shown causation between his complaint and his demotion; and (3) Mr. Lee has not rebutted Defendant's legitimate non-discriminatory reasons for his demotion.

### 1. "Filing a Complaint" as Protected Activity

Mr. Lee sent two letters to USSA (one to his immediate supervisors and one to the USSA's HR representative in the corporate office) requesting back pay for his overtime and mentioning that he had contacted the DOL. Shortly thereafter, Mr. Lee was demoted.

Defendant argues that sending letters to one's employer does not constitute the filing of a complaint for purposes of the FLSA. The Court disagrees. Neither the Fifth Circuit nor the United States Supreme Court has decided whether an employee's internal complaint to his employer constitutes protected activity under the FLSA. District Courts within the Fifth Circuit are split on the issue. *Dronet v. Lafarge Corp.*, 2001 U.S. Dist. LEXIS 8586, at *9-10 (E.D. La. 2001) (internal complaint not protected activity); *Booth v. Intertrans Corp.*, 1995 U.S. Dist. LEXIS 7593 (E.D. La. 1995) (internal complaint not protected activity); *Kerr v. Digital Witness, LLC*, 2005 U.S. Dist LEXIS 30918 (N.D. Tex. 2005) (internal complaint is protected activity); *Martinez v. Bohls Bearing Equip. Co.*, 261 F.Supp.2d 608, 617 (W.D. Tex. 2005) (internal complaint is protected activity). Nonetheless, the large majority of the Circuits in the United States have held that protecting internal complaints is in line with the broad remedial purposes of the Act. The First, Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have held that informal and internal complaints by an employee to his employer are protected activity. *Valerio v. Putnam Assocs.*, 173 F.3d 35 (1st. Cir. 1999); *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987); *EEOC v. Romeo Comm. Schs*. 976 F.2d 985 (6th Cir. 1992); *Brennan v. Maxey's Yamaha, Inc*. 513 F.2d 179 (8th Cir. 1975); Lambert v. Ackerly, 180 F.3d 997 (9th Cir. 1999); *EEOC v. White & Sons Enters.*, 881 F.2d 1006 (11th Cir. 1989). Only the

Second and Fourth Circuits have disagreed. *Lambert v. Genessee Hosp*. 10 F.2d 46 (2d Cir. 1993); *Whitten v. City of Easley*, 62 Fed. Appx. 477 (4th Cir. 2003).

Defendant argues that this Court should adopt the Fifth Circuit's practice of interpreting statutes in light of their plain meaning and find that sending a letter to one's employer does not constitute "filing a complaint." *U.S. v. O'Keefe*,. 426 F.3d 274, 279 (5th Cir. 2005); *Abrams v. U.S. Dep't of Treasury*, 243 Fed. Appx. 4, 6 (5th Cir. 2007) ("when interpreting the a statute the 'plain meaning' of the statute binds the Court"). Defendant argues that sending an internal letter does not equate to a "filing," relying on Black's Law Dictionary's definition of "file:"

> (1) To deliver a legal document to the court clerk or record custodian for placement into the official record; (2) to commence a lawsuit; (3) to record or deposit something in an organized retention system or container for preservation and future reference; (4) *Parliamentary law* to acknowledge and deposit (report, communication or other document) for information and reference only without necessarily taking substantive action.

Despite Defendant's contentions, the Court is convinced that mailing a certified letter which directly references an inquiry with the DOL to one's supervisors and the Human Resources Department at one's employer falls squarely within the plain meaning of "filing" a complaint. According to the United States Postal Service the very purpose of certified mail is to create a record for future reference.[3] Therefore, the Court is convinced, solely based on a textualist reading, that sending a certified letter to one's employer regarding overtime pay and communications with the DOL

---

[3] "With Certified Mail™ you can be sure your article arrived at its destination with access to online delivery information. When you use Certified Mail, you receive a receipt stamped with the date of mailing. A unique article number allows you to verify delivery online. As an additional security feature, the recipient's signature is obtained at the time of delivery and a *record is maintained* by the Post Office™." http://www.usps.com/send/waystosendmail/extraservices/certifiedmailservice.htm (website last viewed March 30, 2008) (emphasis added).

constitutes "record[ing] or deposit[ing] something in an organized retention system" and constitutes protected activity under the FLSA. Further, this interpretation is in line with the remedial purposes of the statute, whereas the reading advocated by Defendant would create perverse incentives. Specifically, Defendant's argument that there can be no retaliation claim when the complaint is raised in an internal communication would encourage an employer to quickly fire an employee, like Lee, who submitted such a complaint, as they could avoid liability for that firing, but would be held responsible for retaliation should they remove the employee after a "formal" complaint is submitted to the DOL.

**2. Causation**

To establish a *prima facia* case of retaliation under the FLSA, Plaintiff must show that: (1) he engaged in protected activity under the FLSA; (2) he was subject to an adverse employment action; and (3) there was a causal connection between the activity and the employment action. *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1993); *Martinez v. Bohls Bearing Equip Co.*, 361 F.Supp.2d 608, 617 (W.D. Tex. 2005). Defendant argues that summary judgment should be granted as to Plaintiff's FLSA retaliation claim because Plaintiff has not produced evidence sufficient to demonstrate a causal connection between his complaints regarding overtime and his demotion. The Court disagrees. Plaintiff has provided direct evidence which, if believed by a jury, would support a finding of retaliation. For instance, one week after Mr. Lee's complaint, David Downes overheard Mr. Erbaugh stating his dissatisfaction with Lee's complaint and his intent to rigidly monitor Mr. Lee in order to find a way to terminate him. Additionally, the close temporal proximity between Mr. Lee's complaint and his demotion, is relevant (but not dispositive) with respect to a *prima facia* case of retaliation. Temporal proximity between a Plaintiff's protected activity and the adverse

constitutes "record[ing] or deposit[ing] something in an organized retention system" and constitutes protected activity under the FLSA. Further, this interpretation is in line with the remedial purposes of the statute, whereas the reading advocated by Defendant would create perverse incentives. Specifically, Defendant's argument that there can be no retaliation claim when the complaint is raised in an internal communication would encourage an employer to quickly fire an employee, like Lee, who submitted such a complaint, as they could avoid liability for that firing, but would be held responsible for retaliation should they remove the employee after a "formal" complaint is submitted to the DOL.

**2.     Causation**

To establish a *prima facia* case of retaliation under the FLSA, Plaintiff must show that: (1) he engaged in protected activity under the FLSA; (2) he was subject to an adverse employment action; and (3) there was a causal connection between the activity and the employment action. *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1993); *Martinez v. Bohls Bearing Equip Co.*, 361 F.Supp.2d 608, 617 (W.D. Tex. 2005). Defendant argues that summary judgment should be granted as to Plaintiff's FLSA retaliation claim because Plaintiff has not produced evidence sufficient to demonstrate a causal connection between his complaints regarding overtime and his demotion. The Court disagrees. Plaintiff has provided direct evidence which, if believed by a jury, would support a finding of retaliation. For instance, one week after Mr. Lee's complaint, David Downes overheard Mr. Erbaugh stating his dissatisfaction with Lee's complaint and his intent to rigidly monitor Mr. Lee in order to find a way to terminate him. Additionally, the close temporal proximity between Mr. Lee's complaint and his demotion, is relevant (but not dispositive) with respect to a *prima facia* case of retaliation. Temporal proximity between a Plaintiff's protected activity and the adverse

employment action is typically sufficient to establish causation. *Martinez,* 361 F.Supp.2d at 617. However when, as here, disciplinary actions occurred prior to the protected activity, temporal proximity *alone* is insufficient. *Id.* Nonetheless, the temporal proximity combined with Plaintiff's direct evidence of retaliation is sufficient to establish a fact question regarding causation.

### 3. Legitimate Non-Retaliatory Reason and Pretext

When a Plaintiff establishes a *prima facia* case of retaliation, the burden shifts to the Defendant to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802-804; *Roberson v. Alltel Info. Sys.*, 373 F.3d 647, 651 (5th Cir. 2004) (applying the *McDonnell Douglas* framework to claims of employment discrimination). If this is done, Plaintiff must produce evidence that the proffered reason for the adverse employment action is merely a pretext and that the real reason is illegal retaliatory animus. *Id.* Defendant asserts that Mr. Lee was legitimately demoted because: (1) he falsified a report by stating that an officer has a proper uniform when, in fact, the officer was missing a name tag, and (2) because he was "gossiping" and "congregating" with other security guards. Plaintiff has submitted evidence which suggests that such legitimate reasons were pretexts for retaliation.

With respect to the falsification of the report, shortly after the issuance of the disciplinary report, Mr. Lee wrote an explanation of the event. PLAINTIFF'S EXHIBIT 5: MR. LEE'S RESPONSE TO DISCIPLINARY ACTION REPORT. That explanation indicates that on April 9, 2007, Mr. Lee noticed that Officer Lewis was not wearing a name tag, but Mr. Lee's supervisor, Greg Ritchey, told Mr. Lee that the situation "had been taken care of." *Id.* Mr. Lee's supervisor also informed him that there would be a name tag at the main office and sent him to retrieve it, but when Lee arrived at the main office he was told that there was no name tag for Officer Lewis. Furthermore, the summary

judgment evidence indicates that no other supervisor received a similar written warning, despite the fact that Officer Lewis had not had a name tag for several weeks, and would have been inspected by other supervisors during this time period. Indeed, Mr. Lee contends that no other supervisors performed post inspections, suggesting that Mr. Erbaugh's stated reasons for the disciplinary action were pretextual. This evidence precludes the entry of summary judgment.

With respect to being disciplined for "gossiping" and "congregating," Plaintiff points to the face of the very document recording the disciplinary action as evidence that the true reason for the demotion was retaliatory animus. DEFENDANT'S EXHIBIT 6 TO EXHIBIT C: MAY 7, 2007 DISCIPLINARY ACTION REPORT. In this document, Mr. Erbaugh states that he is disciplining the Plaintiff for statements Mr. Lee made in the two letters he sent to USSA raising his FLSA complaint, which Erbaugh says indicate that Plaintiff has been discussing overtime issues with other employees and supervisors. He further accuses Mr. Lee of insubordination because Mr. Lee denied having discussed a "civil suit" with another supervisor. Plaintiff correctly notes that a reasonable juror could conclude from the face of this document that Defendant disciplined Mr. Lee for taking action to seek overtime compensation under the FLSA. Thus, the fact that Defendant points to Mr. Lee's letters of complaint as the basis for disciplining Lee is, by itself, some evidence of retaliation. To the extent that Defendant claims it demoted Mr. Lee for the "gossiping" and "congregating" referred to in this letter, it would appear that a reasonable juror could conclude from the letter and the demotion alone that the "gossiping" explanation is pretextual. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim of retaliation will be denied.[4]

---

[4]Defendant also argues in one paragraph with no evidentiary background that the alleged retaliation was not tantamount to a constructive discharge. "To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so

## C. "On Call" "Supervisor Phone" Time

Defendant argues that summary judgment should be granted with respect to Plaintiff's claim for compensation of "on call" or "supervisor phone" time, during which Plaintiff was required to answer a cell phone for an additional eight hour shift. "Whether on call time is compensable working time depends on the working agreement between the parties governing on call work and the degree to which the employee is permitted or free to engage in `personal activities during periods of idleness when he is subject to call." *DePriest v. River West LP*, 187 Fed. Appx. 403, 404-405 (5th Cir. 2006). "An on call employee is not entitled to 'have substantially the same flexibility or freedom as he would if not on call and is not entitled to payment for on call time if he is able to use it effectively for personal purposes such as eating, sleeping, watching television, or engaging in other recreational activity." *Id.* To resolve this issue, the Court must consider the totality of the circumstances and inquire if there is a fact question regarding whether Mr. Lee could use the "on call" time effectively for his own purposes. *Paniagua v. City of Galveston*, 995 F.2d 1310, 1316-17 (5th Cir. 1993). The summary judgment evidence indicates that while Mr. Lee cannot remember the exact number of calls he would receive while holding the phone, he does recall receiving several calls per hour. PLAINTIFF'S EXHIBIT 1: AFFIDAVIT OF RONALD M.J. LEE. Furthermore, in addition to taking the calls, Mr. Lee was also required to respond to the needs created by such calls. *Id.*

---

intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). The following factors are relevant to the determination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisors; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not." *Id.* The summary judgment record includes evidence of Mr. Lee's demotion, reduction in job responsibilities, reassignment of work, and reduction in pay. Accordingly, there are clearly fact issues which preclude summary judgment on the issue of constructive discharge.

Additionally, another supervisor, Jim Arnold, testified as to the large amounts of time worked while holding the phone and stated that the main benefit of the time while holding the phone was for the Defendant. PLAINTIFF'S EXHIBIT 10: DEPOSITION OF JIM ARNOLD. This is sufficient evidence for a jury to conclude that Mr. Lee could not use the on call time for his purposes, and Defendant's motion for summary judgment with respect to on call time will be denied.[5]

**D.      Compensatory and Punitive Damages under the FLSA**

Defendant argues that it is entitled to summary judgment on Plaintiff's claims for compensatory and punitive damages because those remedies are not available under the FLSA. Neither the Fifth Circuit nor the United State Supreme Court has addressed the issue of compensatory damages under the FLSA. Nonetheless, every Circuit to address the issue, including the Sixth, Seventh, Eighth, and Ninth Circuits, have expressly allowed compensatory damages (including mental anguish damages) in the context of a retaliation claim under the FLSA. *Moore v. Freeman*, 355 F.3d 558, 563-64 (6th Cir. 2004); *Travis v. Gary Cmty Health Crt, Inc.*, 921 F.2d 108, 111-12 (7th Cir. 1990); *Broadus v. O.K. Indus., Inc.*, 238 990,992 (8th Cir. 2001); *Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1999). Defendant urges the Court to ignore this precedent and adopt the reasoning of the court in *Kanida v. Gulf Coast Medical Personnel, LP*, which disallowed mental anguish damages in an FLSA retaliation claim. No. H-00-1770 (S.D. Tex., Oct. 25, 2001 and Nov. 20, 2001).

---

[5]Plaintiff notes that he will be seeking a spoilation instruction at trial as Defendant destroyed the cell phone records which would have indicated the number and duration of calls . The Court will not address the spoilation issue at this time, but the lack of these records as a result of the Defendant's destruction of them is another factor the Court has considered in denying the motion for summary judgment on this issue.

Under the FLSA, an employer who violates the anti-retaliation provision shall be liable for:

> *such legal or equitable relief* as may be appropriate to effectuate the purposes [of the anti-retaliation provision], *including without limitation* employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. 216(b) (emphasis added). Defendant argues that because Section 216(b) provides a list of enumerated relief, all other relief is precluded. The Court disagrees. Immediately preceding the list of enumerated relief is the clause "including without limitation." The logical reading of "without limitation" is that while Congress desired to enumerate certain remedies available in an FLSA retaliation suit, it expressly made that list illustrative and not exhaustive, and thus did not intend to limit other legal or equitable remedies "as may be appropriate to effectuate the purposes of the Act." Following the lead of the four circuits to address the issue so far, this Court concludes that compensatory damages are permitted for a retaliation claim under the FLSA.[6]

With respect to punitive damages, the two Circuits which have addressed the issue are split, with the Seventh Circuit expressly allowing punitive damages, and the Eleventh Circuit disallowing them. *Travis v. Gary Cmty Health Crt, Inc.*, 921 F.2d 108, 111-12 (7th Cir. 1990); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000). While the Fifth Circuit has not addressed the issue, when it interpreted the very similar language in the ADEA,[7] it held that punitive damages

---

[6] The Court disagrees with *Kanida* based on the plain language of 29 U.S.C. §216(b). In *Kanida* the Court based its decision on the statutory canon of construction *noscitur a sociis*, meaning "a word is known by the company it keeps." This reasoning is not compelling because the list of remedies available under 29 U.S.C. §216(b) is explicitly non-exhaustive.

[7] "In any action brought to enforce this Act the court shall have jurisdiction to grant such *legal or equitable relief* as may be appropriate to effectuate the purposes of this Act, *including without limitation* judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. 656(b) (emphasis added).

are not available under that statute. *Dean v. Am. Sec. Ins. Co.,* 559 F.2d 1036, 1039 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066 (1978). One of the bases for the decision in *Dean* was that the ADEA permitted liquidated damages for willful violations. *Id.* Similarly, in the operative language in the FLSA, a prevailing plaintiff may recover "the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are a form of punishment. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-26 ("Congress intended for liquidated damages [under the ADEA] to be punitive in nature"). Given all of the above, the undersigned believes that the most appropriate way to give meaning to all of the language of the statute is to conclude that the only punitive damages permitted are liquidated damages equal to the plaintiff's lost wages. Thus, the Court will grant Defendant's motion fur summary judgment as to punitive damages (beyond the liquidated damages permitted by § 216(b)).

**ACCORDINGLY, IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed February 29, 2008 (Clerk's Doc. No. 75) as to Plaintiff's claims for (1) "off the clock" unpaid overtime; (2) retaliation against Plaintiff for his complaints about unpaid overtime; (3) "on call" or "holding the supervisor's phone" overtime pay; and (4) compensatory damages is **DENIED.** As to Plaintiff's claim for punitive damages (beyond the liquidated damages permitted by 29 U.S.C. § 216(b)), the motion is **GRANTED.**

SIGNED this 8th day of April, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE